PAUL A. BONIN, Judge
 

 _[iThis case tests the limits of judicial restraint in deferring to the policy choices of the Louisiana Legislature. In the end, we do not cross the established boundary;
 
 *32
 
 we conclude that La. R.S. 9:5605 is not unconstitutional. Accordingly, for the reasons below, we affirm the trial court judgment sustaining the defendants’ exception of no cause of action and dismissing with prejudice these consolidated lawsuits.
 

 THE STATUTE AND ITS APPLICATION
 

 La. R.S. 9:5605 governs the peremption of legal malpractice claims and provides, in pertinent part:
 

 A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from 12the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
 

 B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events be filed in a court of competent jurisdiction and proper venue on or before September 7, 1998, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning, of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
 

 The Louisiana Supreme Court, in
 
 Reeder v. North,
 
 97-0239 (La.10/21/97), 701 So.2d 1291, examined the statute and concluded that it had both a prescriptive component and a peremptive component. Whenever a client is injured by the legal malpractice of his or her lawyer, the client has one year from the act or omission within which to file suit or one year from the date the client knew or should have known of the act or omission within which to file suit. This is the prescriptive aspect of the statute. Like any other prescriptive period, it may be suspended, interrupted, or waived.
 

 However, the second component, which the firefighters in this case challenge as unconstitutional, is the peremptive aspect of the statute. Regardless of whether or when a client learns of the legal malpractice of his or her attorney, and regardless of the date that the attorney/client relationship terminates, no suit may be filed by a client against an attorney for the attorney’s malpractice more than three years after the delictual act or omission by the attorney. Like any other |speremptive period, it may not be suspended, interrupted, renounced, or waived. La. C.C. art. 3461.
 

 In
 
 Reeder,
 
 the Supreme Court recognized that a client could lose his or her rights against the attorney even before he or she knew of the harm or injury. The Court clearly understood the reach of the
 
 *33
 
 peremptive statute.
 
 [1]
 
 The Court did, however, remand the matter so that the plaintiff could amend his petition to plead the unconstitutionality of the statute. We have heard no more from the plaintiff in
 
 Reeder.
 

 Now the New Orleans firefighters are before us, taking up the issue of unconstitutionality where
 
 Reeder
 
 left off. However, before we examine the constitutionality of the statute, we emphasize that if the statute is constitutional, then we are bound as an intermediate appellate court to follow
 
 Reeder
 
 and enforce the resulting dismissal with prejudice of the plaintiffs’ cause of action because they did not timely bring an action against their attorney. They will have lost their right to enforce the action even before they knew about it.
 

 THE PROCEEDINGS IN THE TRIAL COURT
 

 The plaintiffs’ petitions set out the history of class-action litigation in which they were involved as plaintiffs and were represented by Louis Robein, Jr., an attorney and the defendant herein. It is a long history, stretching from 1981, and a part of a saga in which New Orleans firefighters have been litigating against the LCity of New Orleans on issues of pay benefits, some of which remain unresolved.
 
 See New Orleans Firefighters Local 632 v. City of New Orleans,
 
 2007-1475 (La.App. 4 Cir. 3/05/08), 980 So.2d 760,
 
 writ denied,
 
 2008-0626 (La.5/09/08), 980 So.2d 693.
 

 The petitions alleged that the firefighters were led to believe that their suits against the City included a claim for “longevity pay” pursuant to La. R.S. 33:1992(B), which the Legislature by Act 132 of 1962 and Act 55 of 1968 had mandated but not funded. The firefighters further alleged that attorney Robein filed the original lawsuit on their behalf on July 14,1981; however, it was not until November 15, 2004, when the Louisiana Supreme Court denied the writ applications in
 
 New Orleans Firefighters Local 632 v. City of New Orleans,
 
 2004-1590, 2004-1601, 2004-1604 (La.11/15/04), 887 So.2d 475, 476, that they learned for the first time that Robein had failed to include in them original lawsuit a claim for “longevity pay.” In denying the writ applications, the Supreme Court declined to review this Court’s decision in
 
 New Orleans Firefighters Local 632 v. City of New Orleans,
 
 2003-1281 (La.App. 4 Cir. 5/26/04), 876 So.2d 211, which held that the firefighters’ claim for longevity pay, first asserted in supplemental and amended pleadings in March 1993, had prescribed because the pleadings “did not relate back” to the date of the filing of the original petition.
 
 Id.
 
 at 16-17, 876 So.2d at 223.
 

 The firefighters then filed this lawsuit against Robein and his legal malpractice insurer on May 25, 2005, which was within one year from the date they “first learned” of the alleged malpractice, but is obviously beyond the three Lyears from the date on which he failed to include the claim for
 
 *34
 
 longevity pay in the original lawsuit filed on July 14, 1981.
 
 [2]
 

 From the time that Robein filed the original lawsuit, and its multiple amendments and supplements, undoubtedly answering the numerous challenges raised by the City to the firefighters’ claims, clarifying their claims, and expanding the scope of the litigation, he continued to represent the firefighters.
 

 Robein and his insurer filed peremptory exceptions of no cause of action to the plaintiffs’ petitions, pleading the application of La. R.S. 9:5605. An exception of no cause of action questions whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition.
 
 Badeaux v. Southwest Computer Bureau, Inc.,
 
 2005-0612, 2005-0719, p. 7 (La.3/17/06), 929 So.2d 1211, 1217, citing
 
 Industrial Cos., Inc., v. Durbin,
 
 02-0665, p. 6 (La.1/28/03), 837 So.2d 1207, 1213. The exception is triable on the face of the petition and, to determine the issues raised by the exception, each well-pleaded fact in the petition must be accepted as true.
 
 Id.
 
 Thus, we accept the firefighters’ allegation of the date on which they “first learned” of the omission to timely sue for longevity pay.
 

 Because the firefighters acknowledged that the application of La. R.S. 9:5605, as interpreted by
 
 Reeder,
 
 to these facts would terminate the litigation in favor of the attorney and against them unless the statute was found to be unconstitutional, they pled the unconstitutionality of the statute. They also properly complied with the notification requirements of La. C.C.P. art. 1880 to the Attorney General when a party seeks to have a state statute declared | ^unconstitutional.
 
 See Smith v. Willard,
 
 97-1772, p. 5 (La.App. 4 Cir. 3/11/98), 711 So.2d 723, 725. Because the Attorney General declined to participate in these proceedings, both here and in the trial court, we do not have the benefit of the State’s position regarding the justification, if any, for the constitutionality of the statute.
 

 DISCUSSION
 

 We do, of course, start the inquiry with the strong legal presumption that the statute is constitutional.
 
 See Fransen v. City of New Orleans,
 
 2008-0076, 2008-0087, p. 11 (La.7/1/08), 988 So.2d 225, 234 (citations omitted). Because statutes are presumed constitutional, the party challenging the statute bears the burden of proving its unconstitutionality. Id. It is a fundamental duty of the judicial branch of government to determine the applicability, legality and constitutionality of a statute, and to invalidate acts of the legislative branch which expressly or impliedly violate rights protected by the constitution.
 
 See City of New Orleans v. Scramuzza,
 
 507 So.2d 215, 219 (La.1987).
 

 The firefighters challenge the constitutionality of La. R.S. 5605 on three specific grounds: (1) the statute violates due process because it denies persons access to the courts in violation of La. Const. Art. I, § 22; (2) it denies persons equal protection and due process of law under La. Const. Art. I, § 2 and § 3; and (3) it denies persons equal protection and due process of law under U.S. Const., Amend. XIV, § 1.
 

 As the party seeking a declaration that La. R.S. 9:5605 is unconstitutional, the firefighters must meet the standard of showing clearly and convincingly that it
 
 *35
 
 was the constitutional aim to deny the legislature the power to enact the statute in |7question.
 
 See Fransen,
 
 2008-0076, 2008-0087, at p. 11, 988 So.2d at 234 (citations omitted). The trial judge in this case allowed the firefighters to bring toward considerable evidence to support their contention that the statute violates U.S. Const., Amend. XIV, § 1 and La. Const. Art. I, § 2, § 3 and § 22.
 

 In opposition to Robein’s peremptory exception of no cause of action and in support of their claim that La. R.S. 9:5605 unconstitutionally denies persons access to the courts, the firefighters submitted a law review comment: Jennifer Thornton, Comment,
 
 Louisiana Revised Statute Section 9:5605: A Louisiana Lawyers’s Best Friend,
 
 74 Tul. L.Rev. 659 (1999), wherein Thornton states that “a statute of limitations usually withstands an open courts[sic] challenge as long as the statute affords potential plaintiffs a reasonable time within which to file actions.” Id. at 680. The firefighters contend that La. R.S. 9:5605 deprives potential plaintiffs of their right because it may require a client to sue his or her attorney while the attorney continues to represent that client on the matter from which the legal malpractice arises, effectively denying the client a reasonable time within which to file a claim for legal malpractice. As noted,
 

 If clients are reasonably lulled into inaction or do not discover an error or act because they are relying on their fiduciary relationship with their attorney, they may legitimately claim that the statute unreasonably limited their right of access to the courts and their right to a legal remedy.
 

 Id.
 
 at 682.
 

 At the July 26, 2007, hearing on the exception, firefighters Donald Needom and Martin Gaal testified that Robein led them to believe that the lawsuit filed in July 1981 contained their claim for a two-percent longevity-pay raise. However, they learned in 2004 that that was not the case when the Louisiana Supreme Court Ldenied the writ applications in
 
 New Orleans Firefighters Local 632 v. City of New Orleans,
 
 2004-1590, 2004-1601, 2004-1604 (La.11/15/04), 887 So.2d 475, 476.
 

 La. Const. Art. I, § 22 provides:
 

 All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.
 

 The access to courts clause does not prohibit legislative restriction of legal remedies.
 
 Lay v. Rachel-Major,
 
 99-0476 (La.App. 1 Cir. 5/12/00), 761 So.2d 723, 727. The clause operates only to ensure that the courts will be open to provide remedies “which are fashioned by the legislature.” Id.
 
 (citing Sons v. Inland Marine Service, Inc.,
 
 577 So.2d 225, 230 (La.App. 1st Cir.1991)). In
 
 Reeder,
 
 the Supreme Court, addressing the issue of access to courts, stated:
 

 Statutes of limitation are exclusively a legislative prerogative. In setting a statute of limitation, a legislature does not eliminate the remedy for a civil wrong; it makes a legislative determination that after a certain period of time no cause of action can arise. Until the time that a cause of action vests, a legislature has the power to create new rights and abolish old ones.
 
 Dunn v. Felt,
 
 379 A.2d 1140, 1141 (Del.Super.1977). In finding that the right to recover in tort is not a fundamental right, our court has noted that “[w]here access to the judicial process is not essential to the exercise of a fundamental constitutional right, the legislature is free to allocate access to the judicial machín-
 
 *36
 
 ery on any system or classification which is not totally arbitrary.”
 
 Bazley v. Tortorich,
 
 397 So.2d 475, 485 (La.1981);
 
 Everett v. Goldman,
 
 359 So.2d 1256 (La.1978);
 
 Reeder,
 
 97-0239, p. 9, 701 So.2d at 1296-1297. (emphasis added).
 

 The firefighters’ erroneous argument that the access-to-courts clause ensures everyone a right to have his claims heard ignores the exclusions from that universal access concept by means of the legislatively created statutes of limitations. Thus, |awe find La. R.S. 9:5605 does not deny the firefighters access to the courts in violation of La. Const. Art. I, § 22. The firefighters must seek relief not in the lower and appeals courts but in the Legislature.
 

 And their second and third claims of unconstitutionality focus on the Legislature. To prove their second and third claims of unconstitutionality, the firefighters put forth evidence of the so-called “legislative history,” which was the supposed basis for the rationale for the enactment of the statute. The Legislature, in apparent reliance upon the Supreme Court’s reasoning in Crier
 
 v. Whitecloud,
 
 496 So.2d 305, 310 (La.1986) (on rehearing), made a “record” justifying the statute on the basis of an insurance crisis affecting legal malpractice premiums, echoing the justification for prescriptive periods and “caps” or limits on amounts of recovery in medical malpractice claims.
 
 [3]
 

 The firefighters easily demonstrated the flaws in this legislative history and established clearly that it could not be the basis on which to justify the statute. They offered testimony of a leading provider of legal malpractice insurance coverage in Louisiana, who contradicted the “legislative history” that there was ever a premium crisis. Additionally they proffered the affidavit of a Louisiana lawyer engaged in lobbying the Legislature who similarly contradicted the “legislative history” as being an inaccurate recitation of the facts concerning legal malpractice premium costs or an alleged coverage crisis at the time of the passage of La. R.S. 9:5605.
 

 But, unfortunately for the firefighters, however impressive the testimony of their witnesses as to the misrepresentations and fallacies underlying passage of the|inact, the evidence must have no effect. This case exemplifies why courts should never resort to considering “legislative history” when a clear and unambiguous statute is under attack. It is the
 
 act
 
 of the Legislature which we must consider, not the statements of lobbyists, special interest groups, or even the policy or the wisdom of legislators themselves.
 
 See Scramuzza,
 
 507 So.2d at 219. For this reason, Robein and his insurer are correct that we are not authorized to consider the so-called “legislative history” evidence put forward by the firefighters in making our determination; and we do not.
 

 The doctrine of peremption was not contained in the Code of 1870, but rather was based on Louisiana jurisprudence. See Revision Comment 1982 to La. C.C. art. 3458, Comment (a); Comment, Prescription and Peremption-The 1982 Revision of the Louisiana Civil Code, 58 Tul. L.Rev. 593, 601 (1984). It was codified as La. C.C. art. 3458 by Acts 1982, No. 187, § 1, eff. Jan. 1, 1983. Thereafter, the Louisiana Legislature has enacted specific per-emptive statutes for numerous professions.
 
 See, e.g.,
 
 La. R.S. 9:5604 (certified public accountants-3 years); La. R.S. 9:5606 (insurance agents — 3 years); La. R.S. 9:5607
 
 *37
 
 (architects, engineers, interior designers, surveyors, real estate developers — 5 years).
 

 Additionally, in recent years the Legislature has subjected certain kinds of actions to peremptive limitations, despite a long history in our law.
 
 See, e.g.,
 
 La. C.C. art.2041 (revocatory action-3 years); La. C.C. art. 117 (post-divorce spousal support-3 year’s); La. C.C. art. 2595 (lesion-ary rescission — 1 year).
 

 This governmental interest in prescriptive statutes is clear: it seeks to strike a balance between addressing the harm caused to an injured plaintiff and not disadvantaging the ability of a defendant to know about a claim in time to gather evidence to defeat the claim. Louisiana’s traditional prescriptive periods barring Inactions are comparatively short, but they are subject to modification by special circumstances.
 
 [4]
 
 A defendant may be timely sued long after the facial prescriptive period has expired because the period was suspended or interrupted by some lawful cause.
 
 See, e.g.,
 
 La. C.C. art. 3469 (prescription is suspended as between spouses during marriage; parents and children during minority; tutors and minors during tutorship; curators and interdicts during interdiction; and caretakers and minors during minority) and La. C.C. art. 3503 (prescription interrupted against a solidary obligor). A defendant can renounce a prescriptive period even after it has accrued. La. C.C. arts. 3449 and 3450. If an action is prescribed, the defendant must timely plead the exception; the court cannot supply it. La. C.C. art. 3452; La. C.C.P. art. 927. Thus, in matters of prescription, the courthouse door is open unless the defendant demands that it be closed to the plaintiff because too much time has passed.
 

 As the U.S. Supreme Court explained in
 
 Chase Sec. Corp. v. Donaldson,
 
 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945) (discussing statutes of limitations):
 

 Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost... .They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a “fundamental” right or what used to be called a “natural” right of the individual. He may, of course, have the protection of the policy 112while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control, (footnote and citation omitted).
 
 See also, Brumfield, v. McElwee,
 
 2007-0548, p. 9 (La.App. 4 Cir. 1/16/08), 976 So.2d 234, 241.
 

 Although the government may have a legitimate interest in enacting prescriptive statutes, the unvarnished reality of the peremptive aspect of the legal malpractice statute, and the other particular peremption statutes mentioned above, is that they are the results of legislative bodies’ enacting special interest legislation. Special interest legislation confers benefits and the
 
 *38
 
 protections of the law on a special identifiable group and withholds the same benefits from those not in the group. And the fire fighters make a compelling argument.
 

 Unlike the legislative branch of government, the judicial branch is prohibited from indulging in the selection of its policy preferences and disguising it under the rubric of “unconstitutionality.”
 
 [5]
 
 Therefore we must apply this law which we find constitutional to these plaintiffs’ claim.
 

 The firefighters correctly argue that the regulation of the practice of law is the exclusive province of the Supreme Court of Louisiana.
 
 See
 
 La. Const. art. V, § 5(B).
 
 [6]
 
 That court is the sole authority to determine whether this statute, as written or applied, impinges on its constitutional authority.
 

 kiDECREE
 

 For the above reasons, we agree with the finding of the trial court that La. R.S. 9:5605 is constitutional. Thus, we affirm the judgment of the trial court sustaining the defendants’ exception of no cause of action, and, accordingly, plaintiffs’ suits against the defendants are dismissed with prejudice.
 

 AFFIRMED.
 

 [1]
 

 . Judge Tobias noted the harshness of La. R.S. 9:5605: "In
 
 Reeder v. North,
 
 97-0349 (La.10/21/97), 701 So.2d 1291, the Louisiana Supreme Court has determined that La. R.S. 9:5606 is a three year peremptive period for malpractice claims against lawyers. The rule is, in my opinion, unduly harsh given that a lawyer’s client does not generally know of the act of malpractice committed by the lawyer until the case is over. Moreover, the ruling places a client in the untenable position of having to file suit against the lawyer while the lawyer is still in active representation of the client's claim.”
 
 Keaty v. Raspanti,
 
 2000-0221, p. 7 (La.App. 4 Cir. 2/7/01), 781 So.2d 607, 612 (Tobias, J., concurring),
 
 rehearing denied
 
 (3/15/01),
 
 appeal after remand,
 
 2003-1080 (La.App. 4 Cir. 2/4/04), 866 So.2d 1045,
 
 rehearing denied
 
 (3/15/04),
 
 writ denied,
 
 2004-0941 (La.6/18/04), 876 So.2d 806,
 
 writ denied,
 
 2004-0947 (La.6/18/04), 876 So.2d 807.
 

 [2]
 

 .
 
 We make no determination that this is the last date on which Robein might have timely asserted a claim for longevity pay.
 

 [3]
 

 . The statute of limitations for the medical profession, La. R.S. 9:5628, has no peremption aspect. Its three-year limit is prescrip-live in nature.
 
 Campo v. Correa,
 
 2001-2707 (La.6/21/02), 828 So.2d 502.
 

 [4]
 

 . See Marc S. Firestone,
 
 Prescription
 
 — What
 
 You Don't Know Can Hurt You
 
 — Louisiana
 
 Adheres to a Three Year Limit on the Discovery Rule,
 
 58 Tul. L.Rev. 1547 (1984).
 

 [5]
 

 .
 
 See, id.
 
 at 1550 n. 26.
 

 [6]
 

 .
 
 See Saucier v. Hayes Dairy Products, Inc.,
 
 373 So.2d 102, 108-10 (La.1978) (on rehearing) (Dennis, Tate, and Calogero, J.J., dissenting);
 
 Succ. of Smith v. Kavanaugh, Pierson & Talley,
 
 565 So.2d 990, 994 (La.App. 1st Cir.1990),
 
 writ denied,
 
 567 So.2d 1125 (La.1990),
 
 reconsideration denied,
 
 569 So.2d 950 (La.1990).